STATE EX REL. SMITH, *Curator*, *Plaintiff in Error*, v. LESLIE *et al.*

1. **Curator: FINAL SETTLEMENT: FRAUD.** A guardian's final settlement of his ward's estate is conclusive against the latter at law, but can be set aside in equity for fraud.

2. **Bill of Exceptions.** The filing of the bill of exceptions in this case held properly authenticated.

83   61
44a  136

*Appeal from Webster Circuit Court.*—HON. R. W. FYAN, Judge.

REVERSED.

*John A. Patterson* and *C. B. McAfee* for plaintiff in error.

(1) No objection was made in the lower court to the petition, either by demurrer, answer or otherwise. (2) The final settlement was fraudulent and should be set aside. In his settlement with Bigger, Leslie was acting for his own interest and not for his ward, a course inconsistent with his duties. *White v. Parker*, 8 Barb. 48; Williams on Executors, p. 449; Reeves Dom. Relations, 325 *et seq.*

*Smith & Krauthoff* for defendants in error.

There is no properly authenticated bill of exceptions in this case. *Fulkerson v. Houts*, 55 Mo. 302; *Pope v. Thomson*, 66 Mo. 661; *Lumber Co. v. Howard*, 76 Mo. 517; *Carter v. Prior*, 78 Mo. 222. The final settlement was a complete bar to the action at law stated in the second count. *State v. Roland*, 23 Mo. 95; *Mitchell v. Williams*, 27 Mo. 399. Upon the first count plaintiff could only recover on proof of fraud, and this the evidence fails to show. *Brent v. Grace*, 30 Mo. 253; *Lovell v. Minot*, 20 Pick. 116; *White v. Parker*, 8 Barb. 48; *Fletcher v. Fletcher*, 29 Vt. 98.

HENRY, J.—This suit was instituted against A. H. Leslie, and Butts and Graham as his sureties, in a curator's bond and against Bigger successor of Leslie, as curator of the estate of Geo. S. Welch. Relator is the successor of Bigger as curator of said estate. The petition contained two counts, one an action at law on the bond of Leslie on which the court properly found for

defendants, because Leslie, as guardian, had made a final settlement, which at law is conclusive upon the ward. *Mitchell v. Williams*, 27 Mo. 399; *State to use of Tourville v. Roland*, 23 Mo. 95.

The other count charged that in the year 1876, Bigger being insolvent and largely indebted to Leslie, the two conspired to defraud said ward and agreed that Leslie should resign his said curatorship and that Bigger should be appointed in his stead. That Leslie should be one of Bigger's sureties in his bond, and that upon a settlement by said Leslie of his curatorship with Bigger as his successor, the latter should take as the assets of the estate of said ward, his, Bigger's, note to Leslie, and receipt to Leslie for the amount as so much money paid by Leslie to him as his successor. That this arrangement between them was carried out, except that Leslie did not become one of Bigger's sureties on said bond. That the bond executed by Bigger and his sureties was and is worthless, he and they then being and still are insolvent. That the sum of $2000 in money and other property came into the hands of Leslie as curator of the ward's estate. That the probate court approved the final settlement of said Leslie containing said fraudulent receipt in ignorance of the transaction between him and his successor and prays that said settlement be set aside and for general relief.

There was a trial which resulted in a verdict and judgment for defendants, from which this appeal is prosecuted. Bigger testified for plaintiff substantially to the facts alleged in the petition, except as to a prior agreement or conspiracy between him and Leslie. That Leslie turned over to him as his successor, his, Bigger's, own note to Leslie, for $1200, with about one year's interest and $13 in cash. The note and $13 was all he ever turned over to him. That Leslie promised to go on his bond, but after Bigger was appointed refused to do so. Leslie, called by plaintiff, also, testified, that Bigger owed him $1200, secured by deed of trust on land,

for which the note was given by Bigger. That this land transaction had nothing to do with Leslie's curatorship. That the land was his own. He considered the note good and it was well secured. That he turned this note over to Bigger and paid him $13, the balance owing by him to the estate of his ward. That he never promised to go on Bigger's bond. Admitted that, after turning the note over to the payor thereof, Bigger, he duly acknowledged satisfaction of the mortgage securing said note. Further testified that Bigger's bond as curator was good when it was executed. The receipt executed by Bigger to Leslie was as follows:

"$1344.40. MARSHFIELD, Mo., Sept. 15, 1876.

Received of A. H. Leslie, curator of the estate of George S. Welch, thirteen hundred and forty-four dollars and forty cents, the amount due from him as said curator.

N. H. BIGGER."

Mrs. Welch, mother of George S. Welch, testified that Leslie told her he would go on Bigger's bond. This was all the evidence bearing on the issues made on the first or equity count of the petition. And the question arises on these facts, whether Leslie and his sureties can shield themselves behind his final settlement. "The guardian's trust is one of obligation and duty and not one of speculation and profit." Schouler's Dom. Rel., sec. 341. "Chancery treats with suspicion all acts and circumstances evincing a disposition on the part of the guardian to derive undue advantage from his position." *Ib.* 348. "The trust should be managed exclusively in the interest of the *cestui que trust*, or in case of guardianship for the ward's benefit." *Ib.* "He must not mingle his own with the funds of his ward," and "unauthorized acts which turn out ill for the ward are not protected." These general principles all condemn the transaction between Leslie and his successor. It was a fraud upon the ward's estate. Instead of money which

he was supposed to have in his hands to the amount of the balance against him as his final settlement or securities in which he had properly invested the ward's estate, he delivered to his successor a note owing by that successor to him, which proved to be worthless in the end, whether good or not when the transaction took place. Leslie testified that the note was then good and well secured, but he cancelled the security after he delivered the note to Bigger, and left it simply a promissory note of Bigger's, unsecured, and Bigger could have cancelled or destroyed it the moment after he received it. It was palpably a contrivance by which he collected his own debt, evincing more anxiety to secure his own than to protect the interest of his ward.

But we are not without direct authority on the subject. In his work on Domestic Relations, Mr. Schouler says: "It is the duty of every guardian whose trust as such is revoked to account honestly to the late ward or to his successor in the trust, if there be one. Thus a guardian cannot discharge himself by simply turning over to his successor the latter's note for an individual debt due the guardian and taking a receipt in full; but he will still be bound in equity to the ward, unless he transfers the ward's property or money in lieu, or good securities, such as are admitted to be proper investments." Sec. 372. The case of *Manning v. Manning*, 61 Ga. 137, cited by Mr. Schouler, is directly in point and fully sustains the text. The securities spoken of in the text are those in which the ward's money has been invested; not securities which the guardian may own in his own right.

There is nothing in the point made by respondents that the bill of exceptions is not properly authenticated. In the record proper is the following entry: "Plaintiff then filed a motion for a new trial, which being overruled, he excepted and filed his bill of exceptions in words and figures as follows:" Then follows the bill of exceptions. That was sufficient. The case is wholly

unlike those of *Fulkerson v. Houts,* 55 Mo. 302; *Pope v. Thomson,* 66 Mo. 661; *Lumber Co. v. Howard,* 76 Mo. 517; and *Carter v. Prior,* 78 Mo. 222.

The judgment is reversed and the cause remanded to be proceeded with in conformity with this opinion. All concur.